MARK C. ELMER (*pro hac vice pending*)
United States Department of Justice
Environmental Enforcement Section
999 18th Street, South Terrace, Suite 370
Denver, Colorado 80202
Telephone: (303) 844-1352
mark.elmer@usdoj.gov

FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

2021 FEB 10  AM 11: 16

MARGARET BOTKINS, CLERK
CHEYENNE

L. ROBERT MURRAY
Acting United States Attorney
NICHOLAS VASSALLO (WY Bar #5-2443)
Assistant United States Attorney
District of Wyoming
P.O. Box 668
Cheyenne, Wyoming 82003-0668
Telephone: (307) 772-2124
nick.vassallo@usdoj.gov

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WYOMING

Civil Action No. 21CV20-S

UNITED STATES OF AMERICA,

     Plaintiff,

v.

FLEUR DE LIS ENERGY, LLC, and,
FDL OPERATING , LLC,

     Defendants.

---

### COMPLAINT

---

     The United States of America, by the authority of the Attorney General, and at the

request of the United States Environmental Protection Agency ("EPA"), files this Complaint and

alleges as follows:

## NATURE OF ACTION

1.      This is a civil action against Fleur de Lis Energy, LLC and FDL Operating, LLC (collectively "FDL" or "Defendants"), seeking civil penalties for violations of the Clean Water Act ("CWA"), 33 U.S.C. §§ 1251-1387. The violations include the unauthorized discharge of oil into waters of the United States or adjoining shorelines and the failure to comply with regulations issued under Section 311(j), 33 U.S.C. § 1321(j), of the CWA at oil and natural gas production facilities in Wyoming.

## JURISDICTION AND VENUE

2.      This Court has jurisdiction over the subject matter of this action and Defendants under Sections 309(d) and 311(b)(7)(E) of the CWA, 33 U.S.C. §§ 1319(d) and 1321(b)(7)(E), and 28 U.S.C. §§ 1331, 1345, and 1355.

3.      Venue is proper in this District pursuant to Section 311(b)(7)(E) of the CWA, 33 U.S.C. § 1321(b)(7)(E), and 28 U.S.C. §§ 1391(b) and 1395(a), because a substantial part of the events or omissions giving rise to the violations occurred in this District and because Defendants are doing business in this District.

## DEFENDANTS

4.      Defendants are limited liability companies organized under the laws of the State of Texas. At all relevant times, Defendants have conducted business in the State of Wyoming.

5.      Defendants own or operate oil and natural gas production facilities in the Salt Creek and Linch Complex fields in Wyoming.

## STATUTORY AND REGULATORY BACKGROUND

### CWA's Prohibition of Discharges of Oil

6.     Section 311(b)(3) of the CWA, 33 U.S.C. § 1321(b)(3), prohibits the unauthorized discharge of oil in "such quantities as may be harmful as determined by the President" into or upon the navigable waters or adjoining shorelines.

7.     The President has delegated to EPA the authority for determining quantities of oil the discharge of which may be harmful. Executive Order No. 12777, dated October 18, 1991, Section 8(a), 56 Fed. Reg. 54757, 54768 (October 22, 1991), superseding Executive Order No. 11735, dated August 3, 1973, Section 1(1), 38 Fed. Reg. 21243 (August 7, 1973).

8.     EPA has determined, for purposes of Section 311(b)(4) of the CWA, 33 U.S.C. § 1321(b)(4), that discharges of oil in such quantities that violate applicable water quality standards, or cause a film or sheen upon or discoloration of the surface of the water or adjoining shorelines, or cause a sludge or emulsion to be deposited beneath the surface of the water or upon adjoining shorelines may be harmful to the public health or welfare or the environment of the United States. 40 C.F.R. § 110.3.

9.     For purposes of Section 311 of the CWA, 33 U.S.C. § 1321, the term "discharge" is defined to include "any spilling, leaking, pumping, pouring, emitting, emptying or dumping," subject to certain specified exceptions not applicable here. Section 311(a)(2) of the CWA, 33 U.S.C. § 1321(a)(2).

### Spill Prevention Control and Countermeasure Regulations

10.     Section 311(j)(1)(C) of the CWA requires the President to promulgate regulations that establish procedures for preventing and containing discharges of oil from onshore facilities into navigable waters. This authority was delegated to EPA.

11.     In 1973, EPA promulgated regulations for preventing discharges of oil from non-transportation-related onshore facilities. 38 Fed. Reg. 34164 (December 11, 1973). Those regulations have been codified at 40 C.F.R. Part 112, Subparts A through C, and are referred to herein as the "Spill Prevention Control and Countermeasure Regulations" or simply "SPCC Regulations."

12.     The SPCC Regulations apply to owners and operators of non-transportation-related onshore and offshore facilities engaged in drilling, producing, gathering, storing, processing, refining, transferring, distributing or consuming oil and oil products, which, due to their location or nature of operations, could reasonably be expected to discharge oil in quantities that may be harmful into or upon the navigable waters of the United States or adjoining shorelines. 40 C.F.R. § 112.1.

13.     As noted earlier, EPA has promulgated a regulation, set forth at 40 C.F.R. § 110.3, specifying what quantities of oil may be harmful to the public health or welfare or the environment. Such quantities include discharges that: (a) violate applicable water quality standards, (b) cause a film or sheen upon or discoloration of the surface of the water or adjoining shorelines, or (c) cause a sludge or emulsion to be deposited beneath the surface of the water or upon the adjoining shorelines. 40 C.F.R. § 110.3.

14.     Pursuant to 40 C.F.R. § 112.3(a), owners and operators of regulated facilities are required to prepare and implement written SPCC Plans in accordance with 40 C.F.R. Part 112.

## Facility Response Plan Regulations

15.     In 1990, Congress amended Section 311 of the CWA by enacting the Oil Pollution Act of 1990 ("OPA"). Section 311(j)(5)(A) directed the President to issue regulations applicable to facilities that because of their location or nature of operations "could reasonably be expected to cause substantial harm to the environment" by discharging oil into or on the

- 4 -

navigable waters of the United States or adjoining shorelines (so-called "substantial harm facilities"). 33 U.S.C. § 1321(j)(5)(A). Section 311(j)(5)(A) further provided that these regulations require the owners or operators of substantial harm facilities to submit "a plan for responding, to the maximum extent practicable, to a worst case discharge, and to a substantial threat of such a discharge, of oil or a hazardous substance." 33 U.S.C. § 1321(j)(5)(A).

16.     In 1991, the President delegated to EPA the authority to promulgate such regulations for non-transportation-related onshore facilities.

17.     In 1994, EPA amended 40 C.F.R. Part 112 by promulgating Facility Response Regulations, which are published at 40 C.F.R. §§ 112.20 and 112.21. The Facility Response Regulations require owners and operators of non-transportation-related onshore oil storage and distribution facilities to determine, under the criteria established by EPA in 40 C.F.R. § 112.20(f)(1), whether their facilities could reasonably be expected to cause substantial harm to the environment by discharging oil into or on navigable waters or adjoining shorelines.

18.     If a facility is determined to be a substantial harm facility under these criteria, the Facility Response Regulations require the owner or operator of the facility to prepare and submit to EPA a Facility Response Plan ("FRP"), which details the facility's emergency plans for a worst case oil spill. 40 C.F.R. § 112.20(a).

19.     The FRP must be consistent with the National Oil and Hazardous Substance Contingency Plan, 40 C.F.R. Part 300, and any applicable area contingency plans. 40 C.F.R. § 112.20(g). In addition, the FRP must either follow the format contained in 40 C.F.R. Part 112, Appendix F, or contain the elements described in 40 C.F.R. § 112.20(h)(1)-(11). The facility must also conduct response training and drill and exercise programs that either follow the

National Preparedness for Response Exercise Program ("PREP") Guidelines or are approved by EPA. 40 C.F.R. § 112.21.

**Remedies for Clean Water Act Violations**

20.     Any owner, operator, or person in charge of an onshore facility from which oil is discharged in violation of Section 311(b)(3) of the CWA, 33 U.S.C. § 1321(b)(3), is subject to a civil penalty of up to $25,000 per day of violation or up to $1,000 per barrel of oil discharged. Section 311(b)(7)(A) of the CWA, 33 U.S.C. § 1321(b)(7)(A). This amount was increased to $48,762 per day or $1,951 per barrel of oil discharged for violations occurring after November 2, 2015 pursuant to the Civil Monetary Penalty Inflation Adjustment Rule, promulgated at 40 C.F.R. Part 19.

21.     Any person who fails or refuses to comply with any regulation issued under Section 311(j) of the CWA, 33 U.S.C. § 1321(j), is subject to a civil penalty of up to $25,000 per day of violation. Section 311(b)(7)(C) of the CWA, 33 U.S.C. § 1321(b)(7)(C). This amount was increased to $48,762 per day for violations occurring after November 2, 2015 pursuant to the Civil Monetary Penalty Inflation Adjustment Rule, promulgated at 40 C.F.R. Part 19.

**GENERAL ALLEGATIONS**

22.     Each Defendant is a "person" as defined in Sections 311(a)(7) and 502(5) of the CWA, 33 U.S.C. §§ 1321(a)(7) and 1362(5), and 40 C.F.R. §§ 112.2 and 122.2.

23.     At all times relevant to this Complaint, Defendants were the "owners or operators" as defined in Section 311(a)(6) of the CWA, 33 U.S.C. § 1321(a)(6), of the oil production facilities referenced herein.

24.     At all times relevant to this Complaint, each oil production facility referenced herein was an "onshore facility" within the meaning of Section 311(a)(10) of the CWA, 33 U.S.C. § 1321(a)(10).

**Discharges of Oil**

*National Response Center ("NRC") Spill No. 1160839*

25. On or about October 5, 2016, approximately 4,746 gallons of oil and produced water was discharged from well 02WC2SE3 in Natrona County, Wyoming owned or operated by Defendants. At least some of the oil and produced water entered a tributary to Salt Creek known as the LACT 11 drainage.

26. The discharged oil and produced water caused a sheen on the LACT 11 drainage and/or discoloration to the adjoining shoreline and was, therefore, in a quantity that "may be harmful" pursuant to 40 C.F.R. § 110.3.

27. Salt Creek is a tributary to the Powder River.

28. The LACT 11 drainage is a "navigable water" within the meaning of Section 502(7) of the CWA, 33 U.S.C. § 1362(7), and 40 C.F.R. § 120.2.

29. Salt Creek is a "navigable water" within the meaning of Section 502(7) of the CWA, 33 U.S.C. § 1362(7), and 40 C.F.R. § 120.2.

30. The discharged oil and produced water are types of "oil" within the meaning of Section 311(a)(1) of the CWA, 33 U.S.C. § 1321(a)(1).

*NRC Spill No. 1162697*

31. On or about October 27, 2016, approximately 509 gallons of oil and produced water was discharged from well 13WC1SE26 in Natrona County, Wyoming owned and/or operated by Defendants. At least some of the oil and produced water entered the LACT 11 drainage.

32. The discharged oil and produced water caused a sheen on the LACT 11 drainage and/or discoloration to the adjoining shoreline and was, therefore, in a quantity that "may be harmful" pursuant to 40 C.F.R. § 110.3.

33.     The LACT 11 drainage is a "navigable water" within the meaning of Section 502(7) of the CWA, 33 U.S.C. § 1362(7), and 40 C.F.R. § 120.2.

34.     The discharged oil and produced water are types of "oil" within the meaning of Section 311(a)(1) of the CWA, 33 U.S.C. § 1321(a)(1).

### *NRC Spill No. 1187112*

35.     On or about August 12, 2017, approximately 23,478 gallons of oil and produced water was discharged from an injection pipeline in Johnson County, Wyoming owned and/or operated by Defendants. At least some of the oil and produced water entered a tributary to Salt Creek known as Indian Draw.

36.     The discharged oil and produced water caused a sheen on the tributary to Indian Draw and/or discoloration to the adjoining shoreline and was, therefore, in a quantity that "may be harmful" pursuant to 40 C.F.R. § 110.3.

37.     Indian Draw and its tributaries are "navigable waters" within the meaning of Section 502(7) of the CWA, 33 U.S.C. § 1362(7), and 40 C.F.R. § 120.2.

38.     The discharged oil and produced water are types of "oil" within the meaning of Section 311(a)(1) of the CWA, 33 U.S.C. § 1321(a)(1).

### *NRC Spill No. 1201019*

39.     On or about January 3, 2018, approximately 383 gallons of oil and produced water was discharged from a pipeline in Natrona County, Wyoming owned and/or operated by Defendants. At least some of the oil and produced water entered the LACT 11 drainage.

40.     The discharged oil and produced water caused a sheen on the LACT 11 drainage and/or discoloration to the adjoining shoreline and was, therefore, in a quantity that "may be harmful" pursuant to 40 C.F.R. § 110.3.

41. The LACT 11 drainage is a "navigable water" within the meaning of Section 502(7) of the CWA, 33 U.S.C. § 1362(7), and 40 C.F.R. § 120.2.

42. The discharged oil and produced water are types of "oil" within the meaning of Section 311(a)(1) of the CWA, 33 U.S.C. § 1321(a)(1).

### *NRC Spill No. 1212849*

43. On or about May 21, 2018, approximately 250 gallons of oil and produced water was discharged from a well in Natrona County, Wyoming owned and/or operated by Defendants. At least some of the oil and produced water entered the LACT 11 drainage.

44. The discharged oil and produced water caused a sheen on the LACT 11 drainage and/or discoloration to the adjoining shoreline and was, therefore, in a quantity that "may be harmful" pursuant to 40 C.F.R. § 110.3.

45. The LACT 11 drainage is a "navigable water" within the meaning of Section 502(7) of the CWA, 33 U.S.C. § 1362(7), and 40 C.F.R. § 120.2.

46. The discharged oil and produced water are types of "oil" within the meaning of Section 311(a)(1) of the CWA, 33 U.S.C. § 1321(a)(1).

### *NRC Spill No. 1213600*

47. On or about May 29, 2018, approximately 306,907 gallons of oil and produced water was discharged from a flow line connected to Well 26TPSW26 in Natrona County, Wyoming owned and/or operated by Defendants. At least some of the oil and produced water entered the LACT 11 drainage.

48. The discharged oil and produced water caused a sheen on the LACT 11 drainage and/or discoloration to the adjoining shoreline and was, therefore, in a quantity that "may be harmful" pursuant to 40 C.F.R. § 110.3.

49.     The LACT 11 drainage is a "navigable water" within the meaning of Section 502(7) of the CWA, 33 U.S.C. § 1362(7), and 40 C.F.R. § 120.2.

50.     The discharged oil and produced water are types of "oil" within the meaning of Section 311(a)(1) of the CWA, 33 U.S.C. § 1321(a)(1).

**Spill Prevention Control and Countermeasure Plans**

*Lease Automatic Custody Transfer ("LACT") Units 4, 5, 10, 11, and 20*

51.     Defendants own and/or operate oil production facilities in the Salt Creek field in Natrona County, Wyoming, known as LACT Units 4, 5, 10, 11, and 20.

52.     At all times relevant to this Complaint, LACT Units 4, 5, 10, 11, and 20 each had a total oil storage capacity of at least 743,694 gallons. The largest tank at each facility, which store crude oil or produced water, has a capacity that ranges from 210,000 gallons (at LACT Units 4 and 11) to 300,720 gallons (at LACT Unit 20). If not properly contained, a spill from these tanks would flow to an unnamed tributary to Salt Creek and then to Salt Creek, where it could reasonably be expected to cause a violation of water quality standards and/or a sheen. Uncontained spills or leaks from other tanks at LACT Units 4, 5, 10, 11, and 20 could result in similar impacts.

53.     Salt Creek and its tributaries are "navigable waters" within the meaning of Section 502(7) of the CWA, 33 U.S.C. § 1362(7), and 40 C.F.R. § 120.2.

54.     LACT Units 4, 5, 10, 11, and 20 are "non-transportation-related facilities" subject to the SPCC Regulations.

55.     Defendants' SPCC Plans for LACT Units 4, 5, 10, 11, and 20 failed to comply with the SPCC Regulations. Deficiencies included:

        (a)     Failure to include piping and transfer structures in facility diagrams, in violation of 40 CFR 112.7(a)(3);

(b)     Failure to include facility-specific discussion of secondary containment for truck transfer areas, in violation of 40 CFR 112.7(a)(1) and (c);

(c)     Failure to include facility-specific discussion from the containment identified in Part B, in violation of 40 CFR 112.9(b)(1);

(d)     Failure to identify which flow-through process vessels do not have secondary containment and to discuss measures required by 40 CFR 112.9(c)(5)(i)-(iv); and

(e)     Failure to discuss or include pipeline maintenance program, as required by 40 CFR 112.9(d).

### *West Sussex B-1 Battery*

56.     Defendants own and/or operate an oil production facility in the Linch Field in Johnson County, Wyoming, known as West Sussex B-1 Battery ("West Sussex Battery").

57.     The West Sussex Battery has a total oil storage capacity of more than 115,000 gallons. Its largest tanks, which are used to store crude oil and produced water, have a capacity of 16,800 gallons. If not properly contained, a spill from these tanks would flow to Indian Draw and then to Salt Creek, where it could reasonably be expected to cause a violation of water quality standards and/or a sheen. Uncontained spills or leaks from other tanks at the West Sussex Battery could result in similar impacts.

58.     Indian Draw and Salt Creek are "navigable waters" within the meaning of Section 502(7) of the CWA, 33 U.S.C. § 1362(7), and 40 C.F.R. § 120.2.

59.     The West Sussex Battery is a "non-transportation-related facility" subject to the SPCC Regulations.

60.     Defendants' SPCC Plan for the West Sussex Battery failed to comply with the SPCC Regulations. Deficiencies included:

    (a)    Failure to include piping and transfer structures in facility diagrams, in violation of 40 CFR 112.7(a)(3);

    (b)    Failure to include facility-specific discussion of secondary containment for truck transfer areas, in violation of 40 CFR 112.7(a)(1) and (c);

    (c)    Failure to include facility-specific discussion from the containment identified in Part B, in violation of 40 CFR 112.9(b)(1);

    (d)    Failure to identify which flow-through process vessels do not have secondary containment and to discuss measures required by 40 CFR 112.9(c)(5)(i)-(iv); and

    (e)    Failure to discuss or include pipeline maintenance program, as required by 40 CFR 112.9(d).

### Facility Response Plans

### *LACT Units 4, 5, and 11*

61.     At all times relevant to this Complaint, LACT Units 4, 5, and 11 each had a total oil or produced water storage capacity of at least 1,000,000 gallons.

62.     LACT Units 4, 5, and 11 are each located near Salt Creek, which flows to the Powder River.

63.     Salt Creek and the Powder River are "navigable waters" within the meaning of Section 502(7) of the CWA, 33 U.S.C. § 1362(7), and 40 C.F.R. § 120.2.

64.     A discharge of oil from LACT Units 4, 5, and 11 into Salt Creek could reasonably be expected to cause substantial harm to the environment.

65.     LACT Units 4, 5, and 11 are "non-transportation-related facilities" subject to the FRP Regulations.

66.     On June 16, 2016, EPA attempted to conduct a government-initiated unannounced exercise ("GIUE") at LACT Units 4, 5, 11 to determine whether these facilities were prepared to respond adequately to a hypothetical spill. The GIUE was not conducted as planned because Defendants on June 16, 2016 incorrectly asserted that LACT Units 4, 5, and 11 were not required to have an FRP.

67.     FDL subsequently submitted an FRP for LACT Units 4, 5, and 11 to EPA.

68.     In 2017, EPA reviewed Defendants' March 2017 FRP for LACT Units 4, 5, and 11 and found various inadequacies identified in a September 20, 2017 letter from EPA to Defendants.

### *LACT Unit 10*

69.     LACT Unit 10 has a total oil storage capacity of 1,323,105 gallons.

70.     LACT Unit 10 is located near Salt Creek, which flows to the Powder River.

71.     Salt Creek and the Powder River are "navigable waters" within the meaning of Section 502(7) of the CWA, 33 U.S.C. § 1362(7) and 40 C.F.R. § 120.2.

72.     A discharge of oil from LACT Unit 10 into Salt Creek could reasonably be expected to cause substantial harm to the environment.

73.     LACT Unit 10 is a "non-transportation-related facility" subject to the FRP Regulations.

74.     In 2017, EPA reviewed Defendants' FRP for LACT Unit 10 dated of October 25, 2017 and found various inadequacies identified in a November 2017 e-mail from EPA to Defendants.

## FIRST CLAIM FOR RELIEF
(Illegal Discharges)

75.     Paragraphs 1 through 74 are re-alleged and incorporated herein by reference.

76.     Each discharge of oil and produced water described in paragraphs 25, 31, 35, 39,

43, and 47 was in such a quantity that may be harmful to the public health or welfare pursuant to

40 C.F.R. § 110.3 and therefore was in violation of Section 311(b) of the CWA, 33 U.S.C.

§ 1321(b).

77.     Defendants are liable for civil penalties not to exceed the statutory maximum per

day for each violation or per barrel of oil discharged, pursuant to Section 311(b)(7)(A) of the

CWA, 33 U.S.C. § 1321(b)(7)(A), and 40 C.F.R. Part 19.

## SECOND CLAIM FOR RELIEF
(SPCC Violations)

78.     Paragraphs 1 through 74 are re-alleged and incorporated herein by reference.

79.     Defendants are required to have SPCC Plans for LACT Units 4, 5, 10, 11, and 20

and the West Sussex Battery.

80.     Defendants' SPCC Plans for LACT Units 4, 5, 10, 11, 20, and the West Sussex

Battery did not meet the requirements of the SPCC Regulations.

81.     Each deficiency in the SPCC Plans for LACT Units 4, 5, 10, 11, 20 and the West

Sussex Battery is a violation of the requirements of the SPCC Regulations.

82.     Pursuant to Section 311(b)(7)(C) of the CWA, 33 U.S.C. §1321(b)(7)(C), and

40 C.F.R. Part 19, Defendants are liable for civil penalties not to exceed the statutory maximum

per day for each violation.

## THIRD CLAIM FOR RELIEF
(FRP Violations)

83.     Paragraphs 1 through 74 are re-alleged and incorporated herein by reference.

84.     Defendants are required to have an FRP for LACT Units 4, 5, 10, and 11.

85.     Defendants' FRP for LACT Units 4, 5, and 11, dated March 2017, did not meet the requirements of the FRP Regulations.

86.     Defendants failed to timely prepare an FRP for LACT Unit 10.

87.     Defendants submitted an FRP for LACT 10 dated October 25, 2017.

88.     Defendants' failure to timely or accurately prepare an FRP for LACT Unit 10, and each deficiency in the March 2017 FRP for LACT Units 4, 5, and 11, is a violation of 40 C.F.R. § 112.20.

89.     In addition, Defendants were not prepared to implement a facility response plan training program or a facility drill/exercise program at LACT Units 4, 5, and 11, as described in paragraph 66, in violation of 40 C.F.R. § 112.20 and 40 C.F.R. Part 112, Appendix E, Section 3.3.1.

90.     Pursuant to Section 311(b)(7)(C) of the CWA, 33 U.S.C. §1321(b)(7)(C), and 40 C.F.R. Part 19, Defendants are liable for civil penalties not to exceed the statutory maximum per day for each violation.

## PRAYER FOR RELIEF

WHEREFORE, the United States requests that this Court:

A.     Assess civil penalties against Defendants for each violation of the applicable provisions of the Act and regulations, as permitted by law;

B.     Award Plaintiff its costs of this action; and

C.     Grant such other and further relief as the Court deems just and proper.

Respectfully submitted,

NATHANIEL DOUGLAS
Deputy Chief, Environmental Enforcement Section
Environment and Natural Resources Division
United States Department of Justice

/s/ Mark C. Elmer
MARK C. ELMER (*pro hac vice pending*)
Senior Counsel
Environmental Enforcement Section
Environment and Natural Resources Division
United States Department of Justice
999 18th Street, South Terrace, Suite 370
Denver, Colorado 80202
Telephone: (303) 844-1352
Fax: (303) 844-1350
Email: mark.elmer@usdoj.gov

L. ROBERT MURRAY
Acting United States Attorney

By:   /s/ Nicholas Vassallo
NICHOLAS VASSALLO
Assistant United States Attorney

OF COUNSEL:

MARC WEINER
Senior Assistant Regional Counsel
U.S. Environmental Protection Agency, Region 8
1595 Wynkoop Street
Denver, Colorado 80202

*Attorneys for the United States of America*